UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEXANDRA HLISTA and ANTHONY HLISTA,<br><br>        Plaintiffs,<br><br>  v.<br><br>SAFEGUARD PROPERTIES, LLC; ESSENTIAL SERVICES, INC.; JOHN BRADLEY DUVALL (A/K/A BRAD DUVALL); JEFF RIEMS; and, MITCHELL HOME SERVICES<br>        Defendants. | Civil Action #2:13-cv-00835-CB<br><br>**JURY TRIAL DEMANDED** |

## THIRD AMENDED COMPLAINT

1. This is an action for damages brought by Plaintiffs, Alexandra Hlista and Anthony Hlista (the "Hlistas"), for Defendants' violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1962(c); Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692, et seq.; the Unfair Trade Practice and Consumer Protection Law ("UTPCPL"), 73 P.S. §201-9.1, et seq.; as well as state claims for trespass to property, invasion of privacy and intentional infliction of emotional distress.

I. **JURISDICTION AND VENUE**

2. The jurisdiction of this Court over Counts I and II arises under RICO, 18 U.S.C. §1964(c); the FDCPA, §1692(k)(d); and, 28 U.S.C. §1331. Supplemental jurisdiction over the Hlistas' state claims over Counts III through VI arise under 28 U.S.C. §1367. Venue lies in the Western District of Pennsylvania, as the Hlistas' claims arose from the acts of the Defendants, Essential Services, Inc. ("Essential"); Safeguard Properties, Inc. ("Safeguard"); John Bradley Duvall ("Mr. Duvall"); Jeff Riems ("Mr. Riems"); and, Mitchell Home Services ("Mitchell") perpetrated in Allegheny County.

## II. <u>PARTIES</u>

3. Plaintiffs, Alexandra and Anthony Hlista, are married individuals residing in Allegheny County, Pennsylvania. The Hlistas are "persons" as defined by RICO, 18 U.S.C. §1961(3), and "consumers" as defined by the FDCPA, 15 U.S.C. §1692a(3).

4. Defendant, Safeguard Properties, LLC ("Safeguard"), is a Delaware limited liability company doing business at 650 Safeguard Plaza, Brooklyn Heights, Ohio. Safeguard is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692(a)(6). For purposes of Count I, Safeguard is a member of the Safeguard-Essential "association in fact enterprise" as defined by RICO, 18 U.S.C. §1961(4). For purposes of Count II, Safeguard is a Defendant-person as defined by RICO, 18 U.S.C. §1961(3).

5. Defendant, Essential Services, Inc. ("Essential"), does business at 431 Davidson Road, Pittsburgh, Pennsylvania. Defendant, Jeff Riems is an employee and the general manager of Essential and Defendant, John Bradley Duvall is an employee. For purposes of Count I, Essential is a Defendant-person as defined by RICO, 18 U.S.C. §1961(3). Essential is also a member of the Safeguard-Essential "association in fact enterprise" as defined by RICO, 18 U.S.C. §1961(4).

6. Defendant, John Bradley Duvall A/K/A Brad Duvall ("Mr. Duvall"), is an employee of Essential, and an independent contractor working in conjunction with Safeguard. He works in Pennsylvania at 431 Davidson Road, Pittsburgh, Pennsylvania. For purposes of Count I, Mr. Duvall is a Defendant-person as defined by RICO, 18 U.S.C. §1961(3). He broke into the Hlistas' home and the home of a number other homeowners directly or indirectly under the direction of Safeguard.

7. Defendant, Jeff Riems ("Mr. Riems"), is an employee of Essential, and an independent contractor working in conjunction with Safeguard. He works in Pennsylvania at 431 Davidson Road, Pittsburgh, Pennsylvania. Mr. Riems works with Mr. Duvall and, on a number of occasions, he participated in breaking into the Hlistas' home. For purposes of Count I, Mr. Riems is a Defendant-person as defined by RICO, 18 U.S.C. §1961(3). He has also broken into the Hlistas' home and in the home of a number other homeowners directly or indirectly under the direction of Safeguard.

8. Defendant, Mitchell Home Services ("Mitchell"), is an independent contractor working in conjunction with Safeguard and its address is c/o Autumn Lea or Anthony Mitchell, 278 Hooks Lane, Canonsburg, Pennsylvania. Mitchell was responsible for installing the lockbox on the Hlistas' home. Mitchell installed other lockboxes on other homes directly or indirectly under the direction of Safeguard. The lockbox facilitates the subsequent break in and trespass by persons like Mr. Duvall and/or Mr. Reims into homes where such lockboxes are installed. Once a lockbox was installed, the Hlistas' and/or the other homeowners' ability to go in and out of their own homes was severely restricted. Such a procedure caused great fear and anxiety in the Hlistas (and most, if not all, homeowners) by sending a clear message that their home or portions of their home can be seized at any time without any court proceeding.

III. **FACTUAL ALLEGATIONS**

9. On August 31, 2007, the Hlistas borrowed money to purchase a single family home located at 2925 Idaho Avenue, Bethel Park, Pennsylvania, to be their place of residence and safe harbor for their family.

10. Soon after purchasing their home, the originating lender sold the servicing rights to CitiMortgage, Inc. ("Citi"). In November of 2010, the servicing rights were sold to Seterus, Inc. ("Seterus"). No foreclosure action was ever filed on the Hlistas' home.

11. The Hlistas resided peacefully in their home for over five years, until a series of break-ins began in early July 2012.

12. From December 2011 to December 2012, the Hlistas temporarily lived in Charleston, South Carolina so that Mrs. Hlista could attend Charleston Southern University.

13. Throughout their temporary absence, they arranged for Mrs. Hlista's mother and father, Mr. and Mrs. Joseph Trunzo, to maintain and care for their home. Mrs. Trunzo visited their home regularly to pick up mail and maintain the residence, while Mr. Trunzo visited their home to mow the lawn during the summer months approximately once a month.

14. During this time period, Seterus contacted and contracted with Safeguard and, in turn, Safeguard contacted and contracted with Essential to break into the Hlistas' home, and other homes, on multiple occasions. The Hlistas' home was broken into on July 3, 2012; July 13, 2012; July 25, 2012; and, December 22, 2012.

15. Mr. Trunzo became aware of the break-ins in or around August 2012, when he entered the home and saw a sign-in sheet taped to the inside of the home. See Exhibit A, attached hereto.

16. Mr. Trunzo then inspected the entire house, discovering the back door as the point of entry for the break-in. Mr. Trunzo further discovered windows were nailed shut, screen and storm windows were broken and a new lock bearing Seterus' name and a new doorknob were placed on the back door. The lockbox had been installed by Mitchell. Mr. Trunzo photographed the damage and promptly notified his daughter and son-in-law.

17. On December 13, 2012, the Hlistas returned to Pennsylvania and, on December 22, 2012, Mrs. Hlista went to her home and determined, again, someone had broken in through the back door which was still secured by the lockbox placed by Mitchell. It was subsequently learned from Mr. Duvall that the person who broke into the Hlistas' home was in fact Mr. Duvall and/or Mr. Riems, and that Essential had contracted with Safeguard to do so.

18. Mrs. Hlista, as a result of the break-ins, became quite distressed. Fearful of additional break-ins, she no longer felt safe in her own home. In an attempt to increase security and decrease her fears and anxiety, she pushed the refrigerator, outdoor grill and several bookshelves in front of the back door. After securing the property, the Hlistas immediately reported this incident in person to the Bethel Park Police Department so as to prevent future break-ins. See Exhibit B, attached hereto.

19. The Hlistas no longer consider their home safe. Unable to continue living in their home with their children, the Hlistas felt compelled to stay with relatives from December 13, 2012 to January 24, 2013.

20. Mrs. Hlista could no longer focus on school, and her grades declined. She withdrew from classes due to the stress and anxiety that made it virtually impossible for her and her family to live in their own home due to the break-ins.

21. From December 13, 2012 to January 24, 2013, the Hlistas were forced to sleep at a relative's home with their two young children. During this time period they were unable to access most of their possessions from the home, fearing another break-in would occur.

22. As prearranged, on January 24, 2013, Mr. Duvall came to the home to take photographs of the damage.

23. After speaking with Mr. Duvall, Mrs. Hlista realized that she was confronting the same intruder who had been terrorizing her home previously.  She was immediately struck with fear.  Moreover, Mr. Duvall further stated he was not interested in taking pictures, but wanted access to the basement.  Mrs. Hlista refused Mr. Duvall's entry and asked him to leave her home.

24. During this encounter, Mr. Duvall admitted that Safeguard's contractors had entered the home in July and December.

25. In an attempt to protect herself and her family, Mrs. Hlista boarded the back door shut from the inside and stacked heavy boxes in front of the basement door.  Mrs. Hlista went to the Bethel Park Police Department again seeking help.  Once again, the Hlistas were never in foreclosure.

26. The Hlistas even hired and paid an independent contractor to repair the damages to their home.  Although they were able to repair some of the damages themselves, they ended up paying their contractor $400.00.

27. Mrs. Hlista routinely finds herself checking for intruders before entering her home.

28. Mrs. Hlista was unable to return to school for the spring 2013 semester as she was fearful to leave her children at home because of a constant fear of additional break-ins.

29. Safeguard has a long history of contracting with persons like Mr. Duvall to break into homes and has acknowledged a break-in problem.  <u>See</u> Exhibit C, attached hereto.  Nevertheless, Safeguard has failed to correct this reoccurring problem.

## COUNT I
## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. §1962(C) (AGAINST ESSENTIAL, JEFF RIEMS AND JOHN BRADLEY DUVALL)

30. The Hlistas incorporate the preceding paragraphs.

31. Defendants, Essential Services; Jeff Riems; and, John Bradley Duvall violated RICO by committing mail and/or wire fraud to further a scheme designed to break into the Hlistas' and others' homes. The Hlistas were damaged, including, *inter alia*, extreme emotional distress and anxiety, and damage to their home, as a result.

32. The association-in-fact between Safeguard and Essential – referred to hereafter as the Safeguard-Essential Enterprise – is an "enterprise" within the meaning of 18 U.S.C. §1961(4) in so far as this association has: (1) a purpose; (2) relationships among those associated; and, (3) longevity sufficient to pursue the Enterprise's purpose. The Safeguard-Essential Enterprise has engaged in and its activities have affected interstate commerce. It is believed, and therefore averred, that a number of similar break-ins have occurred to other similar Pennsylvania homeowners over a period of ten years. See Exhibit C.

33. Defendants, Essential; Mr. Riems; and, Mr. Duvall are "persons" within the meaning of RICO, §1961(3). Defendants violated RICO, §1962(c) by the acts incorporated herein. Defendants participated in the operation, management, and control of the Safeguard-Essential Enterprise.

34. Defendants are associated with or employed by the Safeguard-Essential Enterprise and knowingly, willfully and unlawfully conducted or participated, directly or indirectly, in the affairs of the Enterprise through a pattern of racketeering activity within the meaning of RICO, §§1961(1), 1961(5), and 1962(c). Defendants had the specific intent to engage in the substantive RICO conduct, mail fraud, to further the break-in scheme.

35. Defendants committed a number of break-ins and communicated with the Safeguard-Essential Enterprise by mail and/or wire (i.e., electronically) as well as through the U.S. mails in furtherance of the scheme. Defendants could not have carried out the break-in scheme absent use of the U.S. mails or interstate wires which constitute predicate acts of racketeering activity indictable under provisions of the U.S. Code enumerated in 18 U.S.C. §1961(1)(B).

36. Defendants' use of the U.S. mails or interstate wires was related to the Hlistas' damages of extreme emotional distress and anxiety, as well as damage to their home.

37. Defendants' racketeering acts were not isolated, but were related in that they had the same or similar purpose and result, participants, victims and method of commission. Further, Defendants' racketeering acts were continuous; occurring before and after the July, 2012 break-ins into the Hlistas' home.

38. The Safeguard-Essential Enterprise was not limited to the predicate acts and extended beyond racketeering activity. It existed separate and apart from the pattern of racketeering activity for the legitimate business purpose of servicing home mortgages. Safeguard and Essential have had, and do, engage in legitimate business outside of its pattern of racketeering activities.

39. Defendants participated in the acts of the Safeguard-Essential Enterprise through the commission of multiple acts of racketeering as described in this Complaint.

40. Defendants committed acts constituting indictable offenses under 18 U.S.C §§1341 and 1343 in that it devised (or intended to devise) a scheme to defraud the Hlistas of their home. For the purpose of executing the break-in scheme, Defendants caused delivery of various documents by the U.S. mails or received such therefrom. Defendants also transmitted or caused to be transmitted by means of wire communications in interstate commerce various writings. The acts

of Defendants set forth above were done with knowledge that the use of the mails or wires would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended.  These acts were done intentionally and knowingly with the specific intent to advance Defendants' wrongful break-in scheme.

41. Defendants' violations of state and federal law, as set forth in this Complaint, each of which directly and proximately injured the Hlistas, including, *inter alia,* extreme emotional distress and anxiety, damage to their home and constituted a continuous course of conduct beginning before July 2012 and continuing through the present.  These violations, including breaking into other residential homes, were a part of a pattern of racketeering activity under RICO, §§1961(1) and (5).

42. Defendants have conducted and/or participated, directly or indirectly, in the conduct of the affairs of the Safeguard-Essential Enterprise through a pattern of racketeering activity as described herein in violation of RICO, §1962(c).

43. The unlawful actions of Defendants have directly, illegally and proximately caused, and continue to cause, economic injuries to the Hlistas.  The Hlistas seek an award of damages for the extreme emotional distress and anxiety, and damage to their home, created by Defendants' series of break-ins to their home.

## COUNT II
## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. §1962(D) (AGAINST SAFEGUARD)

44. The Hlistas incorporate the preceding paragraphs.

45. RICO, 18 U.S.C. §1962(d), provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

46. Defendant, Safeguard has violated 18 U.S.C. §1962(d) by conspiring to violate 18 U.S.C. §1962(c).

47. Defendant, Safeguard is a "person" within the meaning of RICO, §1961(3).

48. In violation of 18 U.S.C. §1962(d), Defendant, Safeguard conspired to facilitate a scheme through the Safeguard-Essential Enterprise through a pattern of racketeering activity as alleged in Count I.

49. The conspiracy's purpose was to obtain property and/or money from the Hlistas and other homeowners, to Safeguard's benefit.

50. Defendant, Safeguard was well aware of the break-in conduct.  See Exhibit C.  Safeguard knowingly, willfully and unlawfully conspired in the break-in scheme.  Defendant agreed to further the break-in scheme.

51. The conspiracy commenced prior to July 2012 and is ongoing.

52. Defendant, Safeguard committed at least one overt act in furtherance of such conspiracy.  These acts included the attempted evictions of the Hlistas from their home.

53. The purpose of the overt acts engaged in by Safeguard was to advance the overall object of the conspiracy, and the harm done to the Hlistas was a reasonably foreseeable consequence of Defendants' actions.

54. The Hlistas have been, and continues to be, injured as a result of Defendants' conspiracy.  The unlawful break-ins of Safeguard have directly, illegally, and proximately caused and continue to cause injuries to the Hlistas.

55. The Hlistas seek an award of damages in compensation for the harm created by Defendants' series of illegal break-ins to their home.

COUNT III
VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT (AGAINST SAFEGUARD, ESSENTIAL, MITCHELL, JOHN BRADLEY DUVALL AND JEFF RIEMS)

56. The Hlistas incorporate the preceding paragraphs.

57. This Count is brought under the FDCPA, 15 U.S.C. §1692, et seq., against Defendants, Safeguard; Essential; Mitchell; Mr. Duvall; and, Mr. Riems.

58. Defendants have violated §1692(f)(6) of the FDCPA for their unfair or unconscionable attempt to collect a debt allegedly owed. Defendants took and/or threatened to trespass into the Hlistas' home.

59. Defendants are all debt collectors as defined by the FDCPA, §1692(a)(6) whose businesses have the principal purpose of enforcing security loan interests.

60. Defendants had no right, contractual or legal, to possess the Hlistas' home, nor did they have an enforceable security interest in the property. Defendants' employees also had no right, during the relevant times, to break into and possess the Hlistas' home. No notice or notification was provided to the Hlistas of the impending break-ins. See Exhibit D (Mortgage, ¶7).

61. Defendants violated the FDCPA when they attempted to enforce and/or collect debts through the enforcement of alleged interests on the Hlistas' home.

62. Debt collector Defendants that make false representations about the "character, amount or legal status of any debt" violate the FDCPA, §1692(e)(2)(A).

63. Debt collector Defendants that engage in collection conduct that is not "expressly authorized by the agreement creating the debt or permitted by law" violates the FDCPA, §1692(f)(1).

64. The Hlistas have been damaged as a result of Defendants' wrongful debt-collection actions.

## COUNT IV
### VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICE AND CONSUMER PROTECTION LAW (AGAINST SAFEGUARD, ESSENTIAL, MITCHELL, JOHN BRADLEY DUVALL AND JEFF RIEMS)

65. The Hlistas incorporate the preceding paragraphs.

66. The Hlistas bring this count pursuant to the UTPCPL, 73 P.S. §201-9.1, et seq., in that Defendants' deceptive conduct regarding the break-ins into the Hlistas' home (in a manner not authorized by the Mortgage or Note) constitutes engaging in deceptive conduct pursuant to the UTPCPL, §§201-2 and 201-4.

67. The UTPCPL, §201-2(4) states that unfair or deceptive practices as defined in the statute prohibit, *inter alia*, the following unfair practices, "(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

68. Pursuant to the UTPCPL, §201-9.2(a) the statutory remedy may include a treble of damages.

69. Defendants violated the UTPCPL through their deceptive conduct regarding the break-ins into the Hlistas' home.

70. Defendants' conduct with regards to the Hlistas' home amounted to willful conversion of their home, which constitutes deceptive conduct.

71. As a direct and proximate result of these unfair and deceptive trade practices, the Hlistas have been damaged by Defendants' conduct.

72. As a result of the violations of the acts as described above, the Hlistas have suffered ascertainable loss for which the Defendants are liable to the Hlistas for treble damages, damages including, *inter alia,* extreme emotional distress and anxiety, and damage to their home, plus attorneys' fees and costs.

## COUNT V
## INVASION OF PRIVACY (AGAINST SAFEGUARD, ESSENTIAL, MITCHELL, JOHN BRADLEY DUVALL AND JEFF RIEMS)

73. The Hlistas incorporate the preceding paragraphs.

74. Defendants repeatedly broke into the Hlistas' home. Each intrusion constituted an invasion of privacy.

75. The Hlistas had an expectation of privacy in their own home.

76. Defendants intruded into the Hlistas' home causing substantial damages including, *inter alia,* extreme emotional distress and anxiety, and damage to their home.

77. The intrusions were, to a reasonable person, highly offensive because, *inter alia,* the Hlistas' home is not, and has never been, in foreclosure proceedings.

78. Safeguard's repeated invasions of the Hlistas' right of privacy were intentional, willful, and malicious.

79. The intrusions constituted an intentional intrusion into the Hlistas' solitude and seclusion and an illegal invasion into the Hlistas' family life at home.

80. Defendants' break-in conduct was the substantial factor that caused the Hlistas' damages including, *inter alia,* extreme emotional distress and anxiety, and damage to their home.

81. As a proximate consequence of the invasions of the right of the Hlistas' privacy, Defendants have caused the Hlistas to suffer wrongful intrusion into the Hlistas' private family activities, loss of sleep, anxiety, nervousness, sickness, physical and mental suffering, pain, anguish, and fright.

82. The Hlistas also suffered severe emotional distress as a result of Defendants' invasion of privacy.

83. Defendants' conduct as described above is malicious, wanton, willful or oppressive, or shows a reckless indifference toward the Hlistas' interests, warranting punitive damages.

### COUNT VI
### TRESPASS TO PROPERTY (AGAINST SAFEGUARD, ESSENTIAL, MITCHELL, JOHN BRADLEY DUVALL AND JEFF RIEMS)

84. The Hlistas incorporate the preceding paragraphs.

85. Defendant, Safeguard wrongfully contacted and contracted with Essential, Mitchell, Mr. Riems and/or Mr. Duvall to break into the Hlistas' home absent authority or consent. See Exhibit D.

86. Safeguard's break-ins through Defendants interfered with the Hlistas' rights of ownership, use, enjoyment and possession of their home.

87. Defendants' willful, wanton and/or reckless invasion of the Hlistas' home caused the Hlistas extreme emotional distress and anxiety.

88. Defendants' conduct as detailed above is malicious, wanton, willful or oppressive, or shows a reckless indifference to the Hlistas' interests warranting punitive damages.

### COUNT VII
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (AGAINST SAFEGUARD, ESSENTIAL, MITCHELL, JOHN BRADLEY DUVALL AND JEFF RIEMS)

89. The Hlistas incorporate the preceding paragraphs.

90. On numerous occasions, Defendants broke into the Hlistas' home in wrongful attempts to satisfy a debt allegedly owed by the Hlistas to their mortgage servicer.

91. Such purported debt was not, in fact, owed by the Hlistas. Again, foreclosure proceedings were never initiated on the Hlistas' home.

92. Defendants knew or recklessly disregarded the fact that foreclosure proceedings had not been initiated and that the debts were not owed.

93. Prior to the wrongful acts of Defendants, the Hlistas were strong, healthy and lived in a safe, comfortable home.  Mrs. Hlista was able to perform her schoolwork and attend to her husband and children.

94. The Hlistas were caused great mental anguish; physical anguish; great inconvenience; caused to be made physically sick; caused great loss of sleep; caused to be made ill; and, caused to suffer great fear, fright and intimidation by Defendants' wrongful actions.

95. The Hlistas have suffered emotional distress as a result of Defendants' intentional conduct.

96. As a proximate consequence of Defendants' intentional infliction of emotional distress, Defendants have caused the Hlistas great worry; loss of sleep; anxiety; nervousness; sickness; physical and mental suffering; pain; anguish; and, fright.

97. The Hlistas have been damaged, including, *inter alia,* extreme emotional distress and anxiety, and damage to their home as a result of Defendants' wrongful acts.

98. Since the break-ins, the Hlistas have been nervous, irritable, and unable to fully enjoy their lives and children.  Mrs. Hlista has been forced to withdraw from school as a result of the emotional distress caused by Defendants.

99. Defendants knew, or recklessly disregarded, that the illegal break-ins were likely to cause the injuries described.

100. Each of the mentioned acts of Safeguard was done maliciously and with the intent to inflict severe mental and emotional distress and anxiety on the Hlistas.  For this reason, and other reasons as stated in this Complaint, the Hlistas seek punitive damages.

**REQUEST FOR RELIEF**

Wherefore, Plaintiffs, Alexandra and Anthony Hlista, respectfully request that this Honorable Court or a jury award the following relief against the Defendants.

(1) Under Count I, an award of compensatory damages, treble damages, and the recovery of reasonable attorneys' fees and costs against Essential, Mr. Riems and Mr. Duvall, as well as any other relief authorized under the RICO statute.

(2) Under Count II, an award of compensatory damages, treble damages, and the recovery of reasonable attorneys' fees and costs against Safeguard, as well as any other relief authorized under the RICO statute.

(3) Under Count III, an award of statutory damages, attorneys' fees, and costs pursuant to the FDCPA, 15 U.S.C. §1692k against Safeguard, Essential, Mitchell, Mr. Duvall and Mr. Riems resulting from their FDCPA violations.

(4) Under Count IV, an award of triple damages, attorneys' fees and legal expenses, pursuant to the UTPCPL, §201-9.2, against Safeguard, Essential, Mitchell, Mr. Duvall and Mr. Riems resulting from their UTPCPL violations.

(5) Under Count V, an award of actual damages and punitive damages against Safeguard for its Invasion of Privacy.  Under Count V, an award of actual damages against Essential, Mitchell, Mr. Duvall and Mr. Riems for their Invasion of Privacy.

(6) Under Count VI, an award of actual damages and punitive damages against Safeguard for its Trespass on the Hlistas' property.  Under Count VI, an award of actual damages against Essential, Mitchell, Mr. Duvall and Mr. Riems for their Trespass on the Hlistas' property.

(7) Under Count VII, an award of actual and punitive damages against Safeguard for its intentional infliction of emotional distress.  Under Count VII, an award of actual damages

against Essential, Mitchell, Mr. Duvall and Mr. Riems for their intentional infliction of emotional distress.

(8) Such other relief for damages as this Honorable Court deems just and equitable, including statutory attorneys' fees and costs.

Respectfully Submitted,

MICHAEL P. MALAKOFF, P.C.

_____
Michael P. Malakoff, Esquire
Pennsylvania Attorney I.D. #11048
Jonathan R. Burns, Esquire
Pennsylvania Attorney I.D. # 315206
437 Grant Street
Suite 200, the Frick Building
Pittsburgh, PA 15219
Telephone: 412-281-4217
Facsimile: 412-281-3262
malakoff@mpmalakoff.com
*Attorneys for Plaintiffs, Alexandra Hlista and Anthony Hlista*

## CERTIFICATE OF SERVICE

I hereby certify that on the **8th** day of **April, 2014**, a true and correct copy of the foregoing **Third Amended Complaint** was served upon the following parties of interest in the manner prescribed below.

*Via this Court's Electronic Filing System*
Markus E. Apelis, Esquire
GALLAGHER SHARP
Bulkley Building – Sixth Floor
1501 Euclid Avenue
Cleveland, OH 44115
*(Attorneys for Defendant, Safeguard Properties, LLC)*

William D. Clifford, Esquire
Douglas C. LaSota, Esquire
DICKIE, McCAMEY & CHILCOTE, P.C.
Two PPG Place, Suite 400
Pittsburgh, PA 15222
*(Attorneys for Defendants, John Bradley Duvall (a/k/a Brad Duvall) and Jeff Riems)*

*Via Process Service*
Essential Services, Inc.
431 Davidson Road
Pittsburgh, PA 15239

*Via Process Service*
Mitchell Home Services
c/o Autumn Lea or Anthony Mitchell
278 Hooks Lane
Canonsburg, PA 15317

_____
Michael P. Malakoff, Esquire